# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

**LISA J. FOSTER,**

       **Plaintiff,**

v.                                                            Civil Action No. 2:17-cv-03820

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

      Pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 12) and Defendant's Brief in Support of Defendant's Decision (ECF No. 15). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.

Background

      Claimant, Lisa J. Foster, filed applications for DIB and SSI on August 19, 2013. Claimant alleged disability beginning July 29, 2013. The claims were denied initially on December 23, 2013, and upon reconsideration on May 20, 2014. Claimant filed a request for hearing on June 10, 2014. A video hearing was held on January 12, 2016. Claimant appeared in Parkersburg, West Virginia, and the Administrative Law Judge presided over the hearing from Charleston, West Virginia. On April 4, 2016, ,a supplemental hearing was held. The Administrative Law Judge (ALJ) denied Claimant's applications on June 21, 2016. On August 17, 2016, Claimant

sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Claimant's request for review on June 26, 2017 (Tr. at 1-5).

Subsequently, On August 15, 2017, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth

and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since July 29, 2013, the alleged onset date (Tr. at 13). Claimant meets the insured status requirements of the Social Security Act through December 31, 2018. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: osteoarthritis of the knees, obesity and mild pulmonary disease (Tr. at 14). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 15-16). The ALJ then found that Claimant has a residual functional capacity to perform light work except she can never climb ladders, ropes or scaffolds, kneel, or crawl and can only occasionally climb ramps and stairs, balance, stoop and crouch (Tr. at 16). She must avoid all hazards, including unprotected heights and dangerous machinery, and must avoid concentrated pulmonary irritants, extreme temperatures and excessive humidity. (*Id.*) The ALJ found that Claimant can perform past relevant work as a waitress (Tr. at 21). On this basis, Claimant's application was denied (Tr. at 22-23).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on June 18, 1965. She has a high school education. On the date of the first hearing, Claimant lived with her husband and her 16 year old daughter (Tr. at 95).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to provide an adequate explanation for her RFC finding, thereby frustrating meaningful review (ECF No. 12). Claimant argues that the RFC assessment incorrectly found that she could work at the light level despite the evidence in the

record reflecting that Claimant was prone to frequent falls. (*Id.*) In response, Defendant asserts that the ALJ correctly considered the evidence as a whole. Defendant asserts that the ALJ's finding that Claimant had no functional limitations associated with her alleged tendency toward frequent falling beyond those included in the ALJ's RFC assessment is supported by substantial evidence (ECF No. 15).

Medical Record

The medical evidence in the record documents Claimant history of bacterial meningitis and subsequent episodes of falling. A hospital discharge summary from Camden Clark Hospital showed that on July 31, 2013, Claimant was transported to the emergency room after being found unresponsive by a family member (Tr. at 374, 378). Claimant was intubated and admitted to the intensive care unit for acute bacterial meningitis, acute manic agitation, altered mental status, hypokalemia and sepsis (Tr. at 379). It is documented in the hospital notes that family members stated that Claimant said she had been falling with increasing frequency prior to her hospital admission (Tr. at 382). A CT of the head without contrast was unremarkable (Tr. at 387). She was discharged on August 9, 2013 (Tr. at 374).

On August 30, 2013, Claimant was evaluated by Michael A. Morehead, M.D. of Parkersburg Neurological Associates, Inc. Dr. Moreland found that Claimant had no residual deficits from her meningitis except for a mild degree of ptosis (Tr. at 409). He indicated there was no ocular impairment and she did not need glasses. (*Id.*) Claimant reported to Dr. Moreland that she had a history of a tendency to fall and difficulty with gait for an undetermined period of time. Dr. Morehead reported that "Muscle strength testing was incomplete, she had trouble relaxing and making full effort." Dr. Morehead stated "[s]he might fall unexpectedly" and "has trouble getting out of low chairs." (*Id.*) Upon examination, Dr. Morehead described Claimant to have "somewhat

of a waddling gait." He stated she had no difficulty getting out of a hard chair "on five efforts" but complained about knee pain. (*Id.*) His impression was a possible primary muscle disorder. (*Id.*) On September 12, 2013, an EMG and nerve conduction study of the upper and lower extremities revealed carpal tunnel syndrome but was essentially normal otherwise (Tr. at 410).

A treatment note from Camden Clark Internal Medical Clinic dated September 5, 2013, documented Claimant's complaints of frequent falling (Tr. at 422). On October 3, 2013, Claimant requested a referral for knee and ankle pain (Tr. at 421). Claimant reported that she was experiencing pain and swelling in her knees and legs. (*Id.*) The treatment note on October 3, 2013, does not mention Claimant frequently falling.

On April 28, 2014, Claimant underwent a neuropsychological screening with Kara Gettman-Hughes, M.A., at the request of the State agency (Tr. at 447). Ms. Gettman-Hughes observed Claimant to walk with an unsteady gait. (*Id.*) Claimant self-reported that since having meningitis, she had frequent headaches, problems staying focused and with memory, swelling in her legs, and had fallen five times at work (Tr. at 448). Claimant's chief complaint during her neuropsychological screening stated that "The claimant was last employed in July 2013 as a waitress at a Shoney's Restaurant. She left this position because of complications from meningitis." (*Id.*) Claimant self-reported that she goes to the store once or twice a month but does not run other errands (Tr. at 452). Claimant self-reported that she does not exercise, although, she previous enjoyed walking "but can no longer engage in this activity. (*Id.*) Claimant self-reported that she is capable of performing her activities of daily living which includes washing dishes, waking her daughter up and making sure her daughter gets to school. (*Id.*)

On May 12, 2014, Atiya M. Lateef, M.D., reviewed Claimant's record to reconsider Claimant's initial application denial (Tr. at 96-109). Dr. Lateef found that Claimant could lift

6

and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of about 6 hours in an 8 hour workday, sit for a total of about 6 hours in an 8 hour workday and that her ability to push and/or pull was unlimited except as shown for her ability to lift and/or carry (Tr. at 104). Dr. Lateef also found that Claimant could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; would need to avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases and poor ventilation; and would need to avoid even moderate exposure to hazards such as machinery and heights (Tr. at 104-05).

Claimant completed a trial of physical therapy at First Settlement Physical Therapy from July 13, 2015, through July 31, 2015 (Tr. at 467). The initial evaluation notes described an antalgic gait with significant strength and range-of-motion deficits, mild balance deficits and edema in her bilateral knees and legs (Tr. at 472). Claimant self reported that she experienced "a couple instances of [her] knee giving out" (Tr. at 474). On July 31, 2015, Claimant's "Progress/Discharge Summary" reported that Claimant "noted the knees are less painful and are feeling stronger" (Tr. at 467). The assessment stated that Claimant has made good progress in both strength and range of motion. (*Id.*)

Claimant was seen by Ashley M. Tolbert, DO, at Camden Clark Internal Medicine Clinic, on September 29, 2015, as a follow-up for medication refills (Tr. at 491). Upon physical examination, Dr. Tolbert reported that both of claimant's knees had normal range of motion (Tr. at 493). The physical examination revealed that Foster had 5/5 normal muscle strength in all muscles (Tr. at 493). Her gait and station were normal. The assessment and plan portion of Dr. Tolbert's examination notes reflect that Claimant was assessed to have mild osteoarthritis in bilateral knees. Claimant self-reported that she had been to several physical therapy sessions over

several previous months and stated "that she does have [a] treadmill at home that she plans to start using" (Tr. at 494).

On January 25, 2016, Brownhilda N. Santo, M.D., performed a physical examination which revealed no evidence of edema, normal 5/5 muscle strength in all muscles, and normal gait and station (Tr. at 543). Dr. Santo referred to a June 2015 x-ray of the bilateral knees that showed only mild osteoarthritis (Tr. at 539). On February 16, 2016, Dr. Santo performed a physical examination which revealed no evidence of lower extremity edema on the right, normal 5/5 muscle strength in all muscles, and normal gait and station (Tr. at 548). Again, Claimant reported that she had a treadmill at home that she intended to start using (Tr. at 539).

Claimant was examined by Sushil Sethi, M.D., on February 16, 2016, at the request of the State agency (Tr. at 518). Dr. Sethi's internal medicine examination of Claimant's lower extremities found no edema (Tr. at 519). Dr. Sethi indicated Claimant could not walk on her tiptoes and heels or squat (Tr. at 519-520). Dr. Sethi reported that Claimant was able to get on and off the examination table without difficulty (Tr. at 519). Claimant's gait was normal. (*Id.*) Dr. Sethi reported that Claimant does not require any assistance in dressing and undressing. Dr. Sethi reported that Claimant was diagnosed with hypertension in 2013. He reported "Periodically, [Claimant] has a feeling she has arthritic symptoms in the knee" and that "She has not had any locking or giving out of any of the joints." (*Id.*)

Dr. Sethi's medical source statement reflected that Claimant's "ability to work with physical activities may only be slightly affected (Tr. at 520). Dr. Sethi indicated that Claimant's ability to work with physical activities would only be slightly affected. The forms for ability to do work related activities have been completed." (*Id.*) Dr. Sethi completed a medical source statement indicating that Claimant could sit for 8 hours at one time (Tr. at 524). Claimant could

8

stand or walk for 6 hours at a time without interruption. (*Id.*)  Dr. Sethi reported that Claimant does not require the use of a cane to ambulate.

Treatments from February 16, 2016, and March 1, 2016, also documented Claimant's continued complaints with headaches and trouble walking (Tr. at 547, 552). On March 4, 2016, a psychological consultative examination was performed by Amy Guthrie, M.A., at the request of the State agency (Tr. at 530). Ms. Guthrie observed Claimant to walk with a normal posture and gait. Claimant indicated that she loses her balance when walking and shifted weight from one leg to the other due to edema. (*Id.*)

On March 7, 2016, Claimant completed a 6-minute walk test for evaluation of her pulmonary impairments (Tr. at 560). Claimant walked at a faster pace during the last half of the test and walked 1500 feet during the test (Tr. at 560, 568).

<u>Claimant's Testimony</u>

Claimant, Lisa J. Foster, testified she previously had worked as a waitress (Tr. at 47). She waited on customers, taking their food and drinks to them, bussing tables and cleaning up throughout the day. She did not run the cash register nor did she perform any managerial duties. (*Id.*) She confirmed she was on her feet for the entire shift and lifted and carried up to 40 pounds (Tr. at 47-48).

Claimant testified that she had gained about 40 pounds since she had stopped working, and her legs and ankles would swell (Tr. at 48). She stated she experienced falls and had difficulty exercising due to fluid in her legs. (*Id.*) She stated that in order to get dressed, she had to sit down. (*Id.*) Claimant stated she had experienced falls at work that managers and customers had witnessed (Tr. at 48, 56). She stated she last fell at her home the prior December while walking in her bedroom when her knee gave out (Tr. at 49).

9

Claimant testified that after having meningitis she had knee pain in both knees and that the right was worse than left (Tr. at 50). She also stated that her ankles swelled to the size of golf balls (Tr. at 51-52). Claimant stated she attempted physical therapy but it was discontinued due to insurance (Tr. at 52). She indicated full knee replacement surgeries were recommended but not until she turned age 50 (Tr. at 52). She stated that due to pain in her wrists and right elbow, she had difficulty carrying heavy things (Tr. at 53).

Claimant recalled falling at work and falling on customers' tables on two occasions (Tr. at 70-71). She described her knee giving out and she could usually catch herself by grabbing a counter when she fell at work but sometimes she fell on her hands and knees (Tr. at 71-72). She stated her last fall was in her bedroom and it was "like a belly smacker, just right down." (*Id.*) Claimant stated she fell without warning and the frequency of her falls varied from three times a week to once every week or so (Tr. at 72).

### Testimony of Judith Brendemuehl, M.D.

Judith Brendemuehl, M.D., testified as a medical expert. Dr. Brendemuehl opined that Claimant did not meet or equal a listing. She stated that Claimant had no physical residual effects from meningitis, ptosis and diplopia (Tr. at 40). Dr. Brendemuehl confirmed that records from a treating neurologist documented Claimant's tendency to fall, difficulty with gait and discussed a possible neurologic disorder. (*Id.*) Dr. Brendemuehl explained that an EMG was performed on one upper extremity, so she could not comment on the diagnosis of carpal tunnel syndrome (Tr. at 40-41). She stated that Claimant had fallen in a walk-in freezer and that x-rays of her knees done in June 2015 revealed mild bilateral osteoarthritis (Tr. at 41).

Dr. Brendemuehl stated Claimant had a BMI was 47. The record documented a difficulty with exercise due to a combination of problems with weight and her knees (Tr. at 41). Claimant

underwent physical therapy and was noted to have a decreased range of motion and the possibility of total knee replacements. (*Id.*) Dr. Brendemuehl stated she did not have records from an orthopedist but that they would be helpful. (*Id.*) Dr. Brendemuehl testified Claimant had no issues with her obstructive sleep apnea or her varicose veins (Tr. at 42). Dr. Brendemuehl testified that she would assess Claimant as having a light RFC. (*Id.*) She stated that Claimant would need to avoid ladders, ropes and scaffolds, kneeling, crawling, all heights and hazardous machinery. (*Id.*)

Vocational Expert Testimony

The vocational expert (VE) described Claimant's past work to include waitress at the semi-skilled, light level (Tr. at 77). The ALJ instructed the VE to consider a hypothetical individual with Claimant's vocational profile and RFC (Tr. at 78). The ALJ asked the VE if such individual could perform "any appropriate work." (*Id.*) The VE responded that the individual could perform Claimant's past work as well as other representative jobs[1] at the unskilled, light level. (*Id.*) On cross-examination by Claimant's counsel, the VE stated that an average of one fall per week could affect an individual's ability to perform work at the light level to an employer's satisfaction (Tr. at 79).

Third Party Statements

Judy Sears, a shift leader at Shoney's restaurant, provided an undated third party statement and stated that she and Claimant had worked together for years (Tr. at 354). Ms. Sears stated that with Claimant's leg problems and falling down suddenly, Claimant was not able to perform her job requirements (Tr. at 354). No time frame was given for Ms. Sears' statement (Tr. at 354).

Tom Jones, a general manager at Shoney's, also provided an undated third party statement

---

[1] The VE opined that such a hypothetical individual could also perform the occupations of a mail clerk, price marker and machine operator (Tr. at 78).

11

(Tr. at 355). Mr. Jones stated that during the last several months of Claimant's employment, she started having a problem with her ankle or leg giving out and would either fall or nearly fall, to the point where she was unable to perform her job on a regular basis (Tr. at 355).

Residual Functional Capacity (RFC)

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin,* 826 F.3d 176, 179–80. (4th Cir. 2016). (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015)). (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

A RFC refers to the most a claimant can still do despite her limitations and is an assessment that is based upon all of the relevant evidence, including descriptions of limitations. 20 C.F.R. §§ 416.945(a), 404.1545. The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 416. 927(d)(2), (3), 404.1527. For cases at the hearing level, the

responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 416.946, 404.1546. Therefore, an ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

## Discussion

Claimant argues that the ALJ's RFC assessment did not discuss or consider any of the medical records dated August 2013 through February 2016, that were supplied by Claimant's counsel during the period when the record was held open by the ALJ after the hearing (ECF No. 12). Claimant asserts that these medical records document her ongoing difficulties with falling. (*Id.*) Claimant avers that the ALJ erroneously found that Claimant's "subjective complaints and alleged limitations are not fully persuasive" without ever explaining how Claimant's testimony regarding her falls was disproved by the record. Claimant asserts that the ALJ failed to adequately explain how she formed the RFC conclusions when the record reflects that Claimant is prone to falling. (*Id.*)

The ALJ reviewed the entire record including all the medical evidence that was presented and the testimony of witnesses during the hearing. The following points were made by the ALJ and are a part of the decision in this matter:

- Claimant's testimony that during the last few years that she worked, she started falling (Tr. at 17);
- Records from Camden Clark Internal Medicine dated December 5, 2013, demonstrate that Claimant stated she was doing well and even thinking about going back to work (Tr. at 17, 420);
- A progress note by Dr. Revelle's, on March 5, 2014, revealing that Claimant's muscle strength was normal and that Claimant's gait was normal (Tr. at 17, 506);
- Physical therapy records showing that Claimant reported that her knees were less painful and felt stronger (Tr. at 17, 467); and,
- A discharge summary by a physical therapist that noted that Claimant made good progress in both strength and range of motion (Tr. at 17, 467).

In the decision, the ALJ referred to the results of a January 25, 2016, physical examination which revealed normal muscle strength (Tr. at 17, 543). This examination revealed no evidence of edema, and revealed a normal gait and station (Tr. at 543). Additionally, the ALJ considered the results of Dr. Sethi's February 2016 examination. This examination showed that Claimant had no edema in her lower extremities, a normal gait, the ability to get on and off the examination table without difficulty and normal motor strength (Tr. at 17).

The ALJ considered Dr. Brendemuehl's testimony that despite Claimant's claim that she had fallen in a walk-in freezer, knee x-rays showed no acute processes and only mild bilateral osteoarthritis (Tr. at 20, 41, 539). Furthermore, the ALJ noted that Dr. Brendemuehl testified about a reference in the record about tendencies to fall and problems with gait (Tr. at 20, 409). When Dr. Morehead saw Claimant shortly after her hospitalization for meningitis, he ordered an EMG after Claimant informed him that she has a tendency to fall and difficulty with gait. (Tr. at 409). As the ALJ explained, Dr. Brendemuehl specifically referred to the fact that EMG testing was normal in the lower extremities (Tr. at 20, 409-410).

The ALJ's discussion explained that Dr. Brendemuehl specifically opined that Claimant could perform work at the light exertional level, but could never climb ladders, ropes, or scaffolds; could never kneel or crawl; and must avoid all heights and hazardous machinery (Tr. at 20). The ALJ gave great weight to Dr. Brendemuelher's opinion and incorporated the limitations that Dr. Brendemuehl endorsed in the residual functional capacity findings (Tr. at 16, 20, 42). Significantly, when Claimant's counsel asked Dr. Brendemuehl to give Claimant the benefit of the doubt and factor her complaints of falling into the residual functional capacity assessment, Dr. Brendemuehl testified that as a result there would be a need to eliminate heights, hazardous

machinery, ladders, ropes, and scaffolds (limitations the ALJ included in the residual functional capacity finding) to accommodate Claimant's limitations (Tr. at 16, 43).

The ALJ considered the opinion of Dr. Lateef, the state agency physician, who reviewed the record and found that Claimant could perform a limited range of light work (Tr. at 20, 104-105). The ALJ gave significant weight to Dr. Lateef's opinion, but explained that the residual functional capacity assessment was more accurate, given the evidence of record, including Dr. Brendemuehl's opinion (Tr. at 16, 20). The ALJ found greater restriction than Dr. Lateef in finding that Claimant could never kneel or crawl and that she must avoid all exposure to hazards such as machinery and heights. (*Id.*) Therefore, the ALJ's residual functional capacity assessment was more restrictive than Dr. Lateef's assessment (Tr. at 16, 104-105).

The ALJ considered Claimant's activities which included performing household chores, going to the store once or twice a month, dining out, attending church and going to Walmart (Tr. at 14-15). In March 2016, Claimant reported that she attended church on Sunday mornings, went to Walmart about once a month, was able to care for her personal hygiene, does some cooking, cleaning, and laundry and that she drives short distances (Tr. at 533).

In the decision, the ALJ referred to the fact that Claimant was encouraged to walk by physicians at Camden Clark Internal Medicine Clinic (Tr. at 18, 421). Specifically, a physician recommended that Claimant walk 5 times a week for 20 minutes, notwithstanding her complaints of knee and ankle pain (Tr. at 421).

The ALJ considered and gave little weight to the statements from Claimant's co-workers because they were vague and inconsistent with the evidence of record (Tr. at 21, 354-355).

As such, the ALJ fully considered the medical evidence and Claimant's subjective complaints in the context of the record as a whole, including her activities of daily living and the

statements submitted by her co-workers, in formulating the RFC finding. Accordingly, the ALJ's decision included a discussion of the evidence of record regarding Claimant's alleged falls that was sufficiently specific to permit meaningful judicial review.

Claimant argues that the evidence "proved" that she was prone to frequent falls (ECF No. 12). To support her argument, Claimant refers to the evidence submitted after the administrative hearing. However, this evidence contains numerous occurrences of Claimant self-reporting her subjective complaints to her medical providers (Tr. at 361-362). The fact that a physician recorded Claimant's allegations does not render it a medical finding by that physician. Claimant does refer to objective clinical findings as well, however, in the Fourth Circuit, the issue is not whether there is some evidence that might tend to support her argument, but whether there is substantial evidence to support the ALJ's decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)

Moreover, "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Id.* (alterations in original) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion *Richardson*, 402 U.S. at 401. (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.1996). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). (alteration in original) (internal quotation marks omitted). "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted).

Claimant essentially requests that this Court do what the law forbids: reweigh the evidence and substitute its findings for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). It should decline to do so. Because substantial evidence supports the ALJ's assessment of Claimant's RFC, the Court should deny Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 12).

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 12), **GRANT** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 27, 2018

_____
Dwane L. Tinsley
United States Magistrate Judge